Darrell Wayne METTS, Appellant,

v.

The STATE of Texas, State.

Nos. 2–99–095–CR, 2–99–096–CR.

Court of Appeals of Texas,
Fort Worth.

March 23, 2000.

Discretionary Review Refused
July 26, 2000.

Jim Claunch, Kyle Claunch, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Sylvia Mandel, Jason Moon, Asst. Crim. Dist. Attys., Fort Worth, for Appellee.

———

PANEL B: DAY, LIVINGSTON, and RICHARDS, JJ.

## OPINION

SAM J. DAY, Justice.

### INTRODUCTION

Darrell Wayne Metts appeals from two convictions for the misdemeanor offense of indecent exposure. In doing so, appellant contends that the evidence is factually insufficient to support his convictions. He also asserts the trial court erred in denying his motion for a directed verdict as to one of the offenses, and in admitting evidence of an extraneous offense. Appellant also argues that the trial court erred in overruling his motion for a mistrial and in failing to grant two requests for special jury instructions. Because we determine the evidence is factually sufficient to support both convictions, the trial court did not err in denying appellant's motion for a directed verdict, and the trial court's various rulings did not constitute reversible error, we overrule appellant's issues and affirm his convictions.

### FACTUAL BACKGROUND

Appellant was charged with having exposed himself to the same individual on two occasions. Because appellant challenges the sufficiency of the evidence to support his convictions, a detailed review of the evidence is necessary.

Sandra Gonzales testified that she lives near the hike and bike trail at Trinity Park. On weekend mornings, she often walks her dogs on the trails. On March 1, 1998 she was walking on the trail when she heard someone jogging up behind her. Gonzales testified that she turned and saw appellant coming toward her, so she moved her dogs to get them out of his way. Gonzales said that shortly after appellant passed her, he turned around and began running back toward her. As he got closer, she could see that appellant was wearing very short red jogging shorts and he was "holding his penis out" and staring at her. Gonzales testified that she was "frightened and scared." She said that she was afraid to return to her car. After about ten minutes, Gonzales saw another man jogging. She stopped him, told him that appellant had exposed himself to her, and asked him to walk her back to her car, which he agreed to do. When they got to Gonzales's car, several pornographic pictures were on her windshield. The man took them and threw them away. She got in her car and went to her house, where she immediately told her boyfriend what happened and then called the police.

Gonzales testified that she was walking her dogs at the same park on the morning of August 9, 1998. As she was returning to her car, she saw appellant standing with his truck door open. He was naked from the waist down and he was watching her. Gonzales testified that appellant's hands were moving up and down in the area of his genitals and he appeared to be masturbating. Gonzales agreed that she did not actually see appellant's penis on this occasion. However, she stated that because appellant's buttocks were exposed and because he was engaged in an act of self-gratification, she surmised that his penis was exposed. Appellant continued to watch Gonzales. Gonzales stated that, although she had intended to get in her car and leave, she turned and walked the other direction because appellant was near her car. She was "shocked and angry." Gonzales recognized appellant as the same man who had exposed himself to her in March. As Gonzales walked away, she stopped two teenage girls who were walking toward appellant because she did not want the girls to see appellant. The girls immediately left the area.

When Gonzales did leave the park, she wrote down appellant's license plate number and then called the police. She said that, at that time, appellant had walked toward some bushes and he watched her as she stopped to copy the plate number. Gonzales was later able to identify appellant's photograph and to identify him at trial.

Appellant testified and denied being in the park on March 1. Although he admitted being there on August 9, he stated that he was merely changing out of his jogging clothes. He said that he changed inside the truck and Gonzales was mistaken when she testified that he was standing outside the door naked from the waist down. Appellant stated that, after he changed, he got in his truck and left. Appellant also said that he always wore a brace when he jogged. Appellant's written statement, in which he stated that he might have changed clothes in his truck on August 9, was introduced into evidence. In that statement, appellant acknowledged that someone might have seen him changing clothes. However, appellant said that he only gave that statement because Detective Donald Hanlon, the officer who took the statement, pressured him into doing so.

Appellant's wife testified on his behalf. She stated that appellant needed to wear a brace when he jogged and that he did not own a pair of red shorts. Additionally, a neighbor of appellant's testified that appellant wore a brace when he jogged.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant asserts that the trial court erred in denying his motion for a directed verdict as to the August offense because there was no evidence that Gonzales saw his genitals on that occasion. A person commits the offense of indecent exposure if: "he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE ANN. § 21.08(a) (Vernon 1994). The information in this case charged that appellant intentionally exposed his genitals. Thus, appellant argues, as he did to the trial court, that because there was no evidence that Gonzales actually saw his genitals, the trial court erred in denying his motion for a directed verdict. In so arguing, appellant

relies on *Beasley v. State*, 906 S.W.2d 270 (Tex.App.—Beaumont 1995, no pet.) (2–1 decision). In *Beasley*, the majority held that, because the witness testified that she did not see Beasley's penis, which he covered with one hand, while holding his penis with the other, his genitals were not "exposed." *Id.* at 272. Because we cannot agree that section 21.08 requires that the victim of the offense see the accused's genitals, we respectfully decline to follow *Beasley*.

■ When a statute is unambiguous, we are required to give effect to the plain meaning of the words unless doing so would lead to absurd results. *See Boykin v. State*, 818 S.W.2d 782, 785–86 n. 4 (Tex. Crim.App.1991); *Uribe v. State*, 7 S.W.3d 294, 296 (Tex.App.—Austin 1999, pet. ref'd). We presume that the legislature used every word and phrase in a statute for a purpose and if the legislature excluded certain words in a statute, it did so for a reason. *See Uribe*, 7 S.W.3d at 296.

■ The statute under which appellant was charged, like indecency with a child by exposure, is based on the accused's actions and mental state, not the victim's comprehension. *See Wilson v. State*, 9 S.W.3d 852, 856 (Tex.App.—Austin 2000, n. pet. h.) (upholding conviction for indecency with a child by exposure where victim did not see appellant's genitals); *Uribe*, 7 S.W.3d at 297 (same). Thus, the State is only required to prove that appellant's genitals were exposed. The victim's perception is not an element of the offense. *See Wilson*, 9 S.W.3d at 856.

■ Likewise, the person to "whom the [offense] is directed is not an essential element" of indecent exposure. *Wallace v. State*, 550 S.W.2d 89, 91 (Tex.Crim.App. 1977). Here, Gonzales testified that appellant was naked from the waist down, that he appeared to be masturbating, and that he continued to stare at her as he did so. Thus, there was circumstantial evidence that appellant exposed his genitals, and direct evidence as to the other elements of

the offense. We hold that this evidence is sufficient to support appellant's conviction for the August offense. *See Beasley*, 906 S.W.2d at 273 (Walker, C.J. dissenting) (stating that law authorizes conviction for indecent exposure where evidence clearly indicates that appellant was in the act of gratifying his sexual desires in the victim's presence). We hold that the trial court did not err in denying appellant's motion for a directed verdict. We overrule issue three.

■ Appellant also asserts that the evidence is factually insufficient to support his convictions for both offenses. In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.'" *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996) (citing *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.— Austin 1992, pet. ref'd, untimely filed)). We may only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* In performing this review, we are to give "appropriate deference" to the fact finder. *Id.* at 136. We may not reverse the fact finder's decision simply because we may disagree with the result. *See Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Instead, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *See id.*

■ Here, appellant seems simply to argue that Gonzales's testimony alone is insufficient to support his conviction. However, conflicts in testimony do not render a jury's verdict clearly wrong and unjust. Based on the evidence as set out above, we hold that the evidence is factually sufficient to support appellant's convictions. We overrule issue seven.

### EXTRANEOUS OFFENSE

■ Appellant asserts that the trial court erred in admitting evidence of an extraneous offense over his objection, in violation of rules 403 and 404 of the rules of evidence as well as his rights to due process.

During appellant's testimony, he said that he felt pressured and "badgered" into confessing to something he did not do by Detective Hanlon. Appellant stated that he was very nervous because he had "not ever been in anything remotely close to this in my life." Appellant also testified that he was very involved in coaching little league and in other youth activities. He said that he could not possibly have been at the park on March 1, because of those responsibilities. Appellant stated that he was instrumental in getting the City Council of Haltom City to institute a policy that would require background checks on individuals who wanted to be involved in little league activities. Appellant testified that, as the father of four children, he was very concerned because he was aware that there were people that wanted to be involved in little league and he "knew what they were about and ... they had no place in the youth organization."

Appellant called Gary Larson, the Mayor of Haltom City, to testify on his behalf. Larson stated that appellant had discussed with him the possibility of requiring background checks for people involved in little league activities. Likewise, appellant called Deputy Charles Kaiser. Kaiser testified that he is employed by the Tarrant County Sheriff's Department. Kaiser stated that he and appellant were close friends and that appellant was very involved in little league and church activities. Kaiser testified that he did not think appellant would have committed these offenses.

On rebuttal, the State sought to introduce evidence that appellant had been previously arrested and charged with two counts of indecent exposure. Appellant objected on the basis of rules 403 and 404(b) of the rules of evidence.

The State called Amy Collins as a witness. Collins testified that in the summer

of 1982, she worked at a Whataburger. She recalled that the same man came through the drive-through window two different days and ordered a Coke. The first time, when Collins leaned out of the window to hand him the drink, she saw that the man's pants were unzipped and his penis was exposed. Approximately a week later, another employee called Collins over to help her. Collins testified that the employee was very upset and "almost terrified." The employee told Collins, who was the shift manager, that a man in the drive-through window had just exposed his penis to her. Collins then called the police, who told her to give the man his order and let him go. When Collins did so, she recognized that it was the same man who had exposed himself to her. Collins wrote down the man's license plate number as he drove away. Collins identified appellant in court as being the same man.[1]

The trial court overruled appellant's objection and permitted Collins to testify before the jury. In overruling appellant's objection, the trial court specifically found that appellant had opened the door to the admission of evidence of his 1982 arrest.

■ Generally, charges of offenses are inadmissible for impeachment purposes unless the charges result in final convictions for felony offenses or final convictions involving moral turpitude, none of which are too remote. *See Reese v. State,* 531 S.W.2d 638, 640 (Tex.Crim.App.1976); *Davenport v. State,* 807 S.W.2d 635, 637 (Tex.App.—Houston [14th Dist.] 1991, no pet.). However, where a witness creates a false impression of law abiding behavior, he "opens the door" on his otherwise irrelevant past criminal history, and opposing counsel may expose the falsehood. *See Delk v. State,* 855 S.W.2d 700, 704 (Tex. Crim.App.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *see also*

*Royal v. State,* 944 S.W.2d 33, 36 (Tex. App.—Texarkana 1997, pet. ref'd). Likewise, when a witness testifies gratuitously as to some matter that is irrelevant or collateral to the proceeding and falsely states or insinuates that he has not had trouble with the police in the past, he has opened the door to impeachment. *See Reese,* 531 S.W.2d at 640. This exception is not limited to final convictions. *See Prescott v. State,* 744 S.W.2d 128, 130–31 (Tex.Crim.App.1988).

Here, appellant testified that he had never been involved in anything "remotely like this" before. He also testified and had others testify on his behalf as to his good and law abiding character. Under these circumstances, the trial court's ruling that he had opened the door to the admission of evidence of his prior arrest for indecent exposure is not outside the zone of reasonable disagreement and we will not disturb it on appeal. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim.App.1991) (op. on reh'g). We overrule issue one.

■ Because appellant did not voice his due process objection at trial, he has waived his right to complain on that basis on appeal. *See* Tex.R.App. P. 33.1(a)(1); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *see also* Tex.R. Evid. 103(a)(1). We overrule issue two.

### TRIAL COURT'S EVIDENTIARY RULINGS

■ Appellant complains, in issue four, that the trial court erred in overruling his objection to a witness's use of the term "confession." During the State's redirect examination of Detective Hanlon, the State asked Hanlon why appellant was arrested. Hanlon replied that appellant's arrest was

---

1. Collins testified that appellant had a beard in 1982, which was similar to the one he had at trial. Appellant then took the stand and contradicted Collins's testimony. Appellant stated that in 1982, he was playing high

school football and would not have been permitted to have facial hair. However, appellant had previously testified that he first grew a beard in 1982 to spite his high school football coach.

based "[o]n the fact that the suspect had, in my opinion, confessed to the offense." The trial court overruled appellant's objection to Hanlon's statement. Nevertheless, appellant objected again and requested a mistrial. The trial court overruled appellant's objection and denied his request. However, on its own, the trial court instructed the jury that "with regard to what label you choose to put on any document, that will be up to you to decide."

 The admission of evidence is within the sound discretion of the trial court. *See Montgomery*, 810 S.W.2d at 391. If the trial court's ruling is within the zone of reasonable disagreement, we will not disturb it on appeal. *See id.* Furthermore, if we can uphold the trial court's decision on any theory applicable to the case, we will do so. *See Spann v. State*, 448 S.W.2d 128, 130 (Tex.Crim.App.1969); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (appellate court should normally defer to trial court's evidentiary rulings). Thus, because the trial court could have determined that Hanlon was merely stating his opinion the trial court's ruling is within the zone of reasonable disagreement, and we will not disturb it on appeal. *See Guzman*, 955 S.W.2d at 89. We overrule issue four.

### JURY INSTRUCTIONS

 Appellant next argues that the trial court erred in denying his request for a special jury instruction. Appellant requested that the trial court instruct the jury that "the word confession has a technical meaning in Criminal Law." Appellant submitted a proposed definition. The trial court denied the request.

Appellant provides no authority that supports his position that he was entitled to the requested instruction based solely on Hanlon's opinion testimony and we are aware of none. We overrule issue five.

 Appellant likewise asserts, in issue six, that the trial court reversibly erred in refusing his request for a jury instruction on circumstantial evidence. The cases that appellant relies on for support of his position that he was entitled to the instruction have been expressly overruled. *See Hankins v. State*, 646 S.W.2d 191, 199 (Tex.Crim.App.1983) (op. on reh'g) (holding that circumstantial evidence charges are valueless and invite confusion). We overrule issue six.

### CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgments.